**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICALE ASSOCIATES, LLC d/b/a MONMOUTH CYCLES, | |
| Plaintiff, | Civil Action No. 15-541 (MAS) (TJB) |
| v. | **MEMORANDUM OPINION** |
| LEON MCGREGOR, et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on Defendants Chase Motorsports, Inc., Dylan Thompson (collectively, "Chase Defendants"), and Auto-Owners Insurance Company's ("AOI") (collectively with Chase Defendants, "Moving Defendants") separate motions to dismiss this action for lack of personal jurisdiction and failure to state a claim for relief, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 4, 7.) Plaintiff Ricale Associates, LLC d/b/a Monmouth Cycles filed opposition to the motions (ECF No. 18), Moving Defendants replied (ECF Nos. 20, 27), Plaintiff filed a sur-reply (ECF No. 28)[1], and Chase Defendants filed a sur-sur-reply (ECF No. 31).[2] The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Moving Defendants' motions to dismiss are granted.

---

[1] Plaintiff's sur-reply was filed with permission from the Court. (ECF No. 25.)

[2] Chase Defendants' sur-sur-reply was filed with permission from the Court. (ECF No. 30.)

I.      **Background & Procedural History**

Plaintiff is a motorcycle dealer located in New Jersey. (Compl. ¶¶ 1,5, ECF No. 8.) This action arises from the alleged theft of nearly $300,000 worth of Plaintiff's motorcycles. (*Id.* ¶ 3.) Plaintiff alleges that this theft was orchestrated by a number of individuals and entities. (*Id.* ¶ 4.) In particular, Plaintiff alleges that three Tennessee auction houses arranged to sell its motorcycles on a consignment basis. (*Id.*) Then, in contravention of their agreement with Plaintiff, the auction houses sold the motorcycles "at significantly lower price[s] than agreed upon" and "fail[ed] to pay [Plaintiff] any monies at all." (*Id.* ¶¶ 34, 45.) In addition, Plaintiff alleges that the auction houses "prearranged" for Defendant Dylan Thompson to provide positive recommendations for their businesses; and they also arranged for Thompson's company, Defendant Chase Motorsports Inc., to purchase the stolen motorcycles "for a nominal amount of money if any money at all." (*Id.* ¶¶ 43-44.) When the alleged theft occurred, one of the Tennessee auction houses, My Auction Connection, LLC, was insured by Defendant AOI, a Michigan corporation with a certificate of authority to transact business in Tennessee. (*Id.* ¶ 17.)

A.      **State Court Proceedings**

Based on these allegations, Plaintiff commenced this action against the auction houses; their owners, solicitors, and contractors; and AOI, in the Superior Court of New Jersey, Monmouth County. (ECF No. 10-1.) Notably, Chase Defendants were not parties to the original state court complaint and the complaint did not allege a federal Racketeering Influence and Corrupt Organizations Act ("RICO "), 18 U.S.C. § 1962, claim. While still in state court, Plaintiff amended its complaint on November 26, 2014. (ECF No. 1-2.) In its amended state court complaint, Plaintiff named Chase Defendants as parties, however, the only allegation that Plaintiff made with respect to Chase Defendants was that, "Defendant Dylan Thompson is the owner of Chase

Motorsports, Inc., where, upon information and belief, the auction house Defendants unloaded the bulk of the vehicles stolen from victim dealers, and enabled the completion of Defendants' scheme." (*Id.* ¶ 12.) Importantly, the amended state court complaint did not contend that Chase Defendants provided a reference for the auction houses or made any other representations to the Plaintiff. In addition, like the original complaint, the amended state court complaint did not assert a federal RICO claim. (*Id.*) This action was removed to this Court pursuant to 28 U.S.C. § 1441 based on diversity jurisdiction. (ECF No. 1.)

### B. Federal Court Proceedings

Following removal, Moving Defendants filed separate motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), for lack of personal jurisdiction and for failure to state a claim on which relief can be granted. (ECF Nos. 4, 7.) On February 20, 2015, more than four years after the alleged theft occurred, Plaintiff filed the Amended Complaint. (ECF No. 8.) In contrast to the prior complaints, in the Amended Complaint Plaintiff asserts a federal RICO claim and alleges that Thompson "prearranged" with the auction houses to "misrepresent [their] integrity and honesty" by giving the auction houses a "positive recommendation," and that Thompson did in fact give the auction houses "glowing reviews" in response to the Plaintiff's inquiry. (*Id.* ¶¶ 13, 24-26, 43.) In addition, Plaintiff alleges that Thompson "prearranged" to pay the auction houses only "a nominal amount if any money at all, and always well below retail," for the motorcycles that the auction houses took from "victim dealers." (*Id.* ¶ 44.) By Memorandum Order dated March 12, 2015, the Court asserted that it would construe the Moving Defendants' motions to dismiss as applicable to the Amended Complaint. (ECF No. 17.)

3

## II. <u>Legal Standard</u>

### A. Rule 12(b)(2)

In deciding a motion to dismiss for lack of personal jurisdiction, "[i]t is well established . . . [that] a court is required to accept plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A Rule 12(b)(2) motion, however, "inherently . . . requires resolution of factual issues outside the pleadings, *i.e.* whether in personam jurisdiction actually lies." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). As such, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Id.* "A plaintiff can meet the burden of proof and present a *prima facie* case for the court's exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Machulsky v. Hall*, 210 F. Supp. 2d 531, 537 (D.N.J. 2002) (quoting *Patterson v. Fed. Bureau of Investigation*, 893 F.2d 595, 603-04 (3d Cir. 1990)).

### B. Rule 12(b)(6)

On a Rule 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). While a complaint does not need to contain detailed factual allegations to withstand a Rule 12(b)(6) motion to dismiss, a pleader must "provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); see also Fed. R. Civ. P. 8(a)(2). Put another way, the pleader

must "set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (2d ed. 1990)). Yet, importantly, on a Rule 12(b)(6) motion to dismiss, "the defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III. Personal Jurisdiction Over AOI

### A. Personal Jurisdiction Standard

Rule 4(e) of the Federal Rules of Civil Procedure authorizes a federal district court to assert personal jurisdiction over a non-resident defendant to the extent permissible under the law of the forum state in which the district court sits and if the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 375 U.S. 235, 253 (1958)); *see Sunbelt Corp. v. Noble, Denton, & Assocs.*, 5 F.3d 28, 31 (3d Cir. 1993); *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990); Fed. R. Civ. P. 12(b)(2). New Jersey's long-arm statute "provides for jurisdiction up to the limits of the protection afforded to non-residents by the Due Process Clause of the Fourteenth Amendment." *Telecordia Tech., Inc. v. Telkom SA, Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992); *see generally* N.J. Ct. R. 4:4-4.

A plaintiff may prove that the defendant has purposely availed itself of a forum by establishing specific or general jurisdiction over the defendant. *See Mesalic*, 897 F.2d at 698. Specific jurisdiction holds that "the commission of 'single or occasional acts' in a State may be sufficient to render a corporation answerable in that State with respect to *those acts*, though not

5

with respect to matters unrelated to the forum connections." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (emphasis added) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 318 (1945)). General jurisdiction, on the other hand, entails "instances in which the continuous corporate operations [or activities and contacts of an individual] within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* at 2853 (alterations added) (quoting *Int'l Shoe*, 326 U.S. at 318).

A plaintiff meets his burden, and establishes personal jurisdiction, by demonstrating: (1) that the "defendant ha[d] constitutionally sufficient 'minimum contacts' with the forum" state and (2) that "subjecting the defendant to the court's jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 474 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Here, Plaintiff alleges only specific jurisdiction. (Compl. ¶¶ 19-20.) Plaintiff argues that there is personal jurisdiction over AOI pursuant to Rule 4(e) because "AOI purposely availed itself of the laws of the states of those injured by [The Auction Connection LLC] during the time that AOI's surety bond was valid." (Pl.'s Opp'n Br. 6.) The Court disagrees.

**B.    AOI Does Not Have the Requisite Minimum Contacts**

"'[M]inimum contacts,' has been defined as 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Toys "R" Us, Inc.*, 318 F.3d at 451 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987)) (additional internal quotations omitted). The "purposeful availment" prong of the Due Process analysis requires showing that "the defendant's conduct and connection with the forum State are such that he should reasonably

6

anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Here, Plaintiff does not allege that AOI itself conducted any business in New Jersey. Nor does Plaintiff allege that it was foreseeable that AOI's insured — My Auction Connection, LLC, a Tennessee auction house — would conduct business with a New Jersey entity. Rather, Plaintiff argues that "the very nature of a surety bond makes the issuer unsure who it will benefit" so "AOI had to know that it could benefit persons outside of Tennessee." (Pl.'s Opp'n Br. 26.) Thus, Plaintiff effectively argues that the surety bond established nationwide jurisdiction. Coverage under the surety bond is, however, limited to "(A) non-payment by [My Auction Connection, LLC] of a retail customer's pre-paid title, registration or other related fees or taxes; (B) [My Auction Connection, LLC's] failure to deliver in conjunction with the sale of a vehicle a valid vehicle title certificate free and clear of any prior owner's interest and all liens except the lien created by or expressly assumed in writing by the buyer of the vehicle." (AOI's Moving Br. 8, ECF No. 4-5.) Absent other facts regarding My Auction Connection LLC's customer base, the Court does not find that AOI should have reasonably anticipated being haled into a New Jersey court simply because it issued this surety bond. *See also World-Wide Volkswagen Corp.*, 444 U.S. at 298 ("[T]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.") Accordingly, AOI is not subject to in personam jurisdiction in New Jersey.[3]

---

[3] As the Court finds that AOI is not subject to personal jurisdiction in New Jersey, the Court does not address whether Plaintiff has a right to recover under the surety bond.

## IV. Personal Jurisdiction Over Chase Defendants

In contrast to the allegations against AOI, Plaintiff does not argue that Chase Defendants purposely availed themselves of the laws of New Jersey. Rather Plaintiff argues that "Section 1965 of RICO gives this Court personal jurisdiction over Chase Defendants when this Court has jurisdiction over at least one defendant via minimum contacts and the ends of justice demands it." (Pl.'s Opp'n Br. 6.) Because Plaintiff argues that the Court has personal jurisdiction over Chase Defendants pursuant to the federal RICO statute, the Court must determine whether Plaintiff has stated a federal RICO claim to evaluate whether Chase Defendants are subject to personal jurisdiction. Thus, with respect to Chase Defendants the Court's Rule 12(b)(2) and Rule 12(b)(6) analyses are necessarily intertwined.

### A. RICO Claim – Statute of Limitations

As an initial matter, the Court must determine whether Plaintiff's federal RICO claims, which were asserted on February 20, 2015, are timely. "Although the RICO statute does not expressly provide a statute of limitations, the Supreme Court . . . has established a four-year limitations period for civil RICO claims." *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 232-33 (3d Cir. 2004) (citing *Agency Holding Corp. v. Malley-Duff & Assoc. Inc.*, 483 U.S. 143, 156 (1987)). Plaintiff's federal RICO claims were filed more than four years after the alleged theft occurred, however, Plaintiff contends that these claims are timely because they "relate back to its first amended state complaint," which was filed before the statute of limitations expired. (Pl.'s Sur-reply Br. 3-6.) As discussed below, with the exception of the allegations regarding wire fraud, the Court agrees.

An amendment to a pleading relates back to the original complaint when, inter alia, "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out-or

attempted to be set out-in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "Relation back is structured 'to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.'" *Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir. 2012) (quoting *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010)). "[T]he touchstone of relation back is fair notice.... [O]nly where the opposing party is given 'fair notice of the general fact situation and legal theory upon which the amending party proceeds' will relation back be allowed." *Id.* at 146 (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004)).

Here, with respect to the RICO claims asserted against Chase Defendants, Plaintiff's amendments may be divided into two categories: (1) allegations pertaining to Chase Defendants' involvement in wire fraud; and (2) allegations pertaining to Chase Defendants' receipt of stolen motorcycles. Construing Plaintiff's amended state court complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff provided fair notice only as to RICO claims based on the latter category of allegations.

### 1. Allegations Pertaining to Wire Fraud

In its amended state court complaint, Plaintiff named Chase Defendants as parties, but the only allegation that Plaintiff made with respect to Chase Defendants was that, "Defendant Dylan Thompson is the owner of Chase Motorsports, Inc., where, upon information and belief, the auction house Defendants unloaded the bulk of the vehicles stolen from victim dealers, and enabled the completion of Defendants' scheme."[4] (Compl. ¶ 12.) Importantly, Plaintiff does not contend

---

[4] Plaintiff misstates the record by asserting that "Chase Defendants were specifically included as Enterprise Defendants subject to the state RICO claim asserted in the amended state complaint." (Pl.'s Sur-reply Br. 4, ECF No. 28.) In footnote one of the amended state court complaint, Plaintiff asserted that only the "auction house defendants" were to be referred to as "Enterprise Defendants," and in paragraph seven, Plaintiff used the term "auction house defendants" to refer

9

that Chase Defendants provided a reference for the auction houses, or had any contact whatsoever with Plaintiff or any other "victim dealer." Therefore, the amended state court complaint did not give Chase Defendants fair notice of the wire fraud claim that is asserted in the Amended Complaint. Accordingly, the allegations pertaining to the wire fraud claim (Compl. ¶¶ 13, 24-26, 41-43), do not relate back to Plaintiff's amended state court complaint and are thus time barred.

### 2. Allegations Pertaining to Receipt of Stolen Motorcycles

In Plaintiff's amended state court complaint, Plaintiff asserted that "the auction house Defendants unloaded the bulk of the vehicles stolen from the victim dealers, and enabled the completion of Defendants' scheme." (State Compl. ¶ 12, ECF No. 7-3.) In the Amended Complaint, Plaintiff adds to this allegation by stating that Defendant Thompson "prearranged that [the auction house defendants] would offload many vehicles from the victim dealers on [Chase Defendants], who would pay a nominal amount of money, if any money at all, and always well below retail." (Compl. ¶ 44.) The Court finds that this amendment, which merely "amplif[ies] the factual circumstances surrounding the pertinent conduct," relates back to the amended state court complaint. *Bensel*, 387 F.3d at 310. In addition, although Plaintiff did not assert RICO claims against Chase Defendants in its amended state court complaint, the Court finds that, to the extent that the federal RICO claims are based on Chase Defendants' receipt of the stolen motorcycles, the amended state court complaint provided sufficient notice of these claims. *See also In re Sharps*

---

to the following auction houses: National Public Auction, LLC, My Auction Connection, LLC, and The Auction Connection, LLC. (State Compl. ¶ 7, ECF No. 7-3.) Chase Defendants were not referenced in this paragraph. Likewise, Chase Defendants were not included in the definition of "Enterprise" in paragraph 27 of the amended state complaint. (*Id.*) While Plaintiff characterizes the omission of Chase Defendants from this paragraph as "inadvertent error," (Pl.'s Sur-reply Br. 5, ECF No. 28), the Court finds that this omission coupled with the absence of any assertion in the amended state complaint that Chase Defendants had any contact with Plaintiff deprived Chase Defendants of notice of the wire fraud claim.

*Run Assoc., L.P.*, 157 B.R. 766, 786 n.14 (D.N.J. 1993) ("The comments to the 1991 Amendment to Rule 15(c)(1) evince a manifest intention to liberally construe the relation back doctrine . . . .") Accordingly, Plaintiff's federal RICO claims are timely to the extent that they are based on Chase Defendants' receipt of the stolen motorcycles.

### B. RICO Claim – Violation of § 1962(c)

Section 1962(c) of the federal RICO Act states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). A properly pled violation of 18 U.S.C. § 1962(c) requires a plaintiff to allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir.2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004)). Taking these elements in reverse order, the Court first considers whether Plaintiff has alleged that Chase Defendants engaged in "racketeering activity."

#### 1. The "Racketeering Activity" Requirement

"Racketeering activity," also known as a predicate act, includes the commission of several federal statutory and state common law offenses. 18 U.S.C. § 1961(1). To support its § 1962(c) RICO claim, Plaintiff relies on the following predicate acts listed in § 1961: (1) unlawful money transaction in violation of 18 U.S.C. § 1957 and (2) receipt of stolen vehicles in violation of 18 U.S.C. § 2313.[5] (Compl. ¶ 49(c)-(d).) Merely listing these predicate acts is not sufficient to state a RICO claim. Plaintiff must adequately plead the elements of each predicate act. *Cf. Lum*, 361

---

[5] As discussed above, the Court will not consider Chase Defendants' alleged wire fraud because those allegations are untimely.

F.3d at 223 (stating that allegations of fraud must comply with Rule 9(b) when mail or wire fraud is the predicate act). As explained below, Plaintiff has failed to do so.

### a. Unlawful Money Transaction

To establish an unlawful money transaction under 18 U.S.C. § 1957, a plaintiff must plead that: "(1) the defendant engage[d] or attempted to engage (2) in a monetary transaction (3) in criminally derived property that is of a value greater than $10,000 (4) knowing that the property is derived from unlawful activity and (5) that the property is, in fact, derived from specified unlawful activity." *United States v. Sokolow*, 91 F.3d 396, 408 (3d Cir. 1996). Here, Plaintiff has not alleged that the Chase Defendants knew that the motorcycles were stolen when they purchased them. Accordingly, Plaintiff has not sufficiently pled a violation of § 1957.

### b. Receipt and Possession of Stolen Vehicles

Plaintiff's failure to plead that Chase Defendants knew that the motorcycles were stolen is also fatal to a § 2313 violation. To establish receipt of a stolen vehicle under 18 U.S.C. § 2313, a plaintiff must plead that [defendant] conspired "to receive, possess, store and sell stolen motor vehicles, which vehicles had crossed a State boundary after being stolen, knowing the same to have been stolen." *United States v. Mohabir*, 510 F. App'x 122, 123 (3d Cir. 2013). Accordingly, Plaintiff has not adequately pled a violation of § 2313.

### 2. The "Pattern" Requirement

Moreover, even assuming that Plaintiff could amend to adequately plead these predicate acts, Plaintiff's RICO claim would still fail because the predicate acts were not part of a "pattern" of racketeering activity. "To plead a pattern of racketeering activity, [Plaintiff] must aver not only that each defendant committed at least two acts of prohibited racketeering activity but also that the predicate acts are related and that they amount to or pose a threat of continued criminal activity."

*Hollis-Arrington v. PHH Mortg. Corp.*, No. 05-5051, 2006 WL 3078935, at * 4 (3d Cir. Oct. 26, 2006) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). "A short term scheme threatening no future criminal activity will not suffice." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991). Here, the predicate "acts" are in fact based on a single act — the purchase of Plaintiff's motorcycles; thus, Plaintiff has not pled the requisite number of predicate acts — let alone that they pose a threat of continued criminal activity. *Cf. Id.* at 1413 (stating that continuity requirement is not met "when [the] scheme is short-lived and directed at a limited number of people").

Having found that Plaintiff has not adequately pled that Chase Defendants engaged in a pattern of racketeering, the Court finds that Plaintiff cannot state a § 1962(c) RICO claim. Accordingly, Count One is dismissed with respect to Chase Defendants.

### 3. RICO Claim – Violation of § 1962(d)

Plaintiff also alleges that Chase Defendants violated § 1962(d) by agreeing to "be a source to which [the auction house defendants] could offload the many motorsports vehicles it would need to [sic] rid of in a hurry." (Pl.'s Opp'n Br. 21.)[6] "Any claim under section 1962(d) based on conspiracy to violate the other subsections of 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) (citation omitted). Because the Court finds that Plaintiff's § 1962(c) claim is deficient, it follows

---

[6] As discussed above, the Court will not consider the wire fraud allegations because those allegations are untimely.

that Plaintiff's conspiracy claim must be dismissed. Accordingly, Count Two is dismissed with respect to Chase Defendants.

Because in personam jurisdiction over Chase Defendants was based on Plaintiff's federal RICO claims, and these claims have been dismissed with respect to Chase Defendants, Chase Defendants are not subject to personal jurisdiction in New Jersey.

## V. Conclusion

For the reasons set forth above, Defendants' motions to dismiss are granted. An order consistent with this Opinion will be entered.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** September 29, 2015